UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

                                     X

JOHN RADZIWILL, individually and as sole heir of
the late Lady Grace Maria Countess of Dudley,            **Case No.**

                         Petitioner,

           - against -

REA S. HEDERMAN, as Executor of the Estate of
Robert Silvers, Deceased,
                         Respondent.
_____

## MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S MOTION TO COMPEL ARBITRATION AND FOR STAY OF DISCOVERY PROCEEDINGS

LICHTER GLIEDMAN OFFENKRANTZ PC
Attorneys for Petitioner
551 Fifth Avenue – 24th Floor
New York, NY 10176
(212) 867-7750
Email: rjo@lgofirm.com

On the Brief:

       Ronald J. Offenkrantz, Esq.

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTORY STATEMENT ............................................................................................1

STATEMENT OF FACTS .........................................................................................................1

LEGAL ARGUMENT................................................................................................................3

    POINT I ...............................................................................................................................3

        PETITIONER'S CLAIMS SHOULD BE COMPELLED TO ARBITRATION IN
        ACCORDANCE WITH THE TERMS OF THE DECEMBER 1999 AGREEMENT
        EXECUTED BY PETITIONER AND ROBERT SILVERS ...........................................3

           A.    The Arbitration Agreement is Enforceable under the Federal
                 Arbitration Act and New York Law . ...............................................................3

           B.    Both the Petitioner and the Estate's Claims are Within the
                 Scope of the Arbitration Agreement...............................................5

    POINT II...............................................................................................................................6

        UNDER NEW YORK LAW THE SILVER'S ESTATE IS BOUND BY
        DECEDENT'S AGREEMENT TO ARBITRATE .........................................................6

    POINT III..............................................................................................................................8

        THIS COURT MUST STAY THE SURROGATES COURT DISCOVERY
        PETITION INSOFAR AS IT SEEKS TO LITIGATE ANY AND ALL ISSUES
        REGARDING THE PARK AVENUE PROPERTY WHICH IS THE SUBJECT
        OF THE DECEMBER 1999 AGREEMENT BETWEEN PETITIONER AND
        SILVERS ...................................................................................................................8

CONCLUSION...........................................................................................................................9

# TABLE OF AUTHORITIES

## CASES

**Page(s)**

Buccini v Paterno Constr. Co.,
253 N.Y. 256, 170 N.E. 910 (1930).......................................................................................... 6

Dean Witter Reynolds v. Byrd, 470 U.S. 213, 218, 105 S. Ct. 1238 (1985).………………..6

Matter of the Estate of Cassone,
63 N.Y. 2d 756, 480 N.Y.S.2d 317 (1984)....................................................................... 6,7

Moses H. Cone Mem'l Hosp. v. Mercury Construction Corp.,
460 U.S. 1, 103 S. Ct. 927 (1983)......................................................................................... 5

Crewe, et al. v. Rich Dad Education, LLC, et al.,
884 F. Supp. 2d 60 (S.D.N.Y. 2012) ..................................................................................... 6

Gwertzman, et al. v. Gwertzman, Pfeffer, Tokar & Lefkowitz, et al.
1988 WL 138149 (S.D. N.Y. December 12, 1988) ......................................................... 6,7,8

Matter of Kalikow,
58 A.D.3d 846, 872 N.Y.S.2d 511 (2d Dept 2009) ........................................................... 6,7

Kolmer-Marcus, Inc. v. David E. Winer, as Executor,
26 N.Y. 2d 795, 309 N.Y.S. 2d 220 (1970)......................................................................... 6

Kramer v. Hammond, 943 F. 2d 176, 178 (2d Cir. 1991)………………………………..…...5

Matter of Lasky (Styne),
1999 WL 34572728 (Surrogates Court, NY County March 29, 1996) ............................ 6,8

Matter of Liebeskind v. Park Avenue Radiologists P.C, et al,
2008 WL 4699453 (Surrogates Court, Nassau County September 30, 2008)............... 6,7,8

Rodriguez de Quijas v. Shearson/Lehman Bros.,
845 F. 2d 1296 (5th Cir.), affd, 490 U.S 477, 109 S. Ct. 1917 (1989) ................................ 6

S.A. Mineracao da Trinidad-Samitri v. Utah Intl, Inc.,
745 F. 2nd 190 (2nd Cir. 1984)........................................................................................... 5

Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 107 S. Ct. 2332 (1987)………6

Smith Barney Shearson Inc. v. Sacharow, 91 N.Y. 2d 39, 46, 666 N.Y.S. 2d 990
(1997) (same)………………………………………………………………………………….5

## STATUTES

9 U.S.C. §1 ......................................................................................................... 3

9 U.S.C. §2 ...................................................................................................... 3,4

9 U.S.C. §3 ......................................................................................................... 8

9 U.S.C. §4 ......................................................................................................... 5

N.Y. CPLR § 7503 ....................................................................................... 4,5,7,8

N.Y. CPLR § 7512 ............................................................................................... 4

## MISCELLANEOUS

David Horton, The Federal Arbitration Act and Testamentary Instruments
    90 U.N.C.L. Rev. (2012) ................................................................................. 3

## INTRODUCTORY STATEMENT

Petitioner, JOHN RADZIWILL, a citizen of the United Kingdom and a resident of Switzerland and the Principality of Monaco ("Radziwill") respectfully submit this Memorandum of Law in support of his motion to compel his claims and those of the Estate of Robert Silvers ("Silvers" or the "Estate") to arbitration and to stay the pending Discovery Proceedings instituted by the Estate in the Surrogates Court, New York County. Both Petitioner and Silvers executed an agreement in December 1999 ("Agreement") mandating the arbitration of all controversies with respect to a cooperative apartment located in the city and county of New York (the "Park Avenue Property") including the controversies alleged in the Silvers Discovery Proceeding which deal with that apartment.

## STATEMENT OF FACTS

The Court is respectfully referred to the Verified Petition and Exhibits in Support of Petitioner's Motion to Compel Arbitration. In sum, it is alleged that Decedent Silvers, who died a citizen of the United States and resident of New York, entered into an agreement with Petitioner, a citizen of the United Kingdom, which covered all aspects of a cooperative apartment located in the city of New York, including but not limited to the ownership thereof and bank borrowings with respect thereto.

The Agreement ("Exhibit A to the Petition") provided for the arbitration of all disputes between Radziwill and Silvers, was binding on their Estates and heirs, provided for the application of New York Law, and designated Radziwill's mother as a third-party beneficiary of the agreement:

1

**Paragraph 13 of the Agreement provides:**

"13. Arbitration. In the event any controversy or dispute arises with respect to this Agreement or any of its terms or conditions or with respect to any rights arising from or under this Agreement, or with respect to any alleged breach of this Agreement, the controversy or dispute shall be settled by arbitration before three (3) arbitrators in New York city in accordance with the governing rules of the American Arbitration Association. Judgment upon the award rendered may be entered in any Court of competent jurisdiction."

**Paragraph 16 of the Agreement provides:**

"16. Binding Effect. Except as otherwise herein specifically provided, this Agreement shall be binding upon and inure to the benefit of the parties hereto, their heirs, distributees, and legal representatives. This Agreement may not be changed orally and no modification thereof shall be valid unless in writing and signed by both parties hereto."

**Paragraph 18 of the Agreement provides:**

"18. Governing Law. This Agreement shall be governed by and interpreted according to the laws of the state of New York."

**Paragraph 9 of the Agreement provides:**

"9. Death of a Party.

John does hereby agree that in the event of his death prior to Robert's death and prior to either John or Robert offering his respective interest in the Premises for sale pursuant to the provisions of Paragraph 8, his Last Will and Testament will bequeath his interest in the Premises to Lady Dudley.

As part of the consideration to enter into this Agreement, Robert does hereby agree that in the event of his death prior to John's death and prior to either John or Robert offering his respective interest in the Premises for sale pursuant to the provisions of Paragraph 8, his Last Will and Testament will bequeath his interest in the Premises to Lady Dudley, subject to the satisfaction by Lady Dudley of Robert's Loan or of John's Loan, as applicable, and further subject to the payment by Lady Dudley of any and all federal and New York State estate taxes on or allocable to Robert's interest in the Premises.

The provisions of the Paragraph shall survive termination of this Agreement and may be enforceable directly by Lady Dudley."

The proceedings in the Surrogates Court (See Petitioner's Exhibit B to the Petition) initiated by the Executor of the Estate of Robert Silvers was emailed to Radziwill's counsel but has yet to be served. The Estate disputes Radziwill's ownership of the Park Avenue Property and relies upon and attaches a copy of the December 1999 Agreement, containing the arbitration clause to its Surrogates Court Petition (as Exhibit 2).

Notwithstanding the fact that the Silvers' Estate was alerted to the fact that the very agreement it was relying upon required arbitration, the Silvers' Estate has refused to arbitrate.

Since both Radziwill and the Estate of Silvers rely on the same agreement, and that agreement requires arbitration, there can be no defense to Radziwill's Motion to Compel Arbitration or Stay the Surrogates Court proceeding.

## LEGAL ARGUMENT

### POINT I

#### PETITIONER'S CLAIMS SHOULD BE COMPELLED TO ARBITRATION IN ACCORDANCE WITH THE TERMS OF THE DECEMBER 1999 AGREEMENT EXECUTED BY PETITIONER AND ROBERT SILVERS

Petitioner's claims regarding the Park Avenue Property should be compelled to arbitration in accordance with the terms of the Agreement executed by Silvers and Radziwill.

## A. The Arbitration Agreement is Enforceable under the Federal Arbitration Act and New York Law.

The Arbitration Act, 9 U.S.C. §1, et seq. (2010) (the "FAA"), and New York Law govern the enforceability of the arbitration agreement contained in the Agreement executed by Silvers and Radziwill. The FAA applies to all contracts evidencing a transaction involving commerce. Section 2 of the FAA, 9 U.S.C. §2, provides in relevant part:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction...shall be valid, irrevocable, and enforceable, save upon such grounds as exists at law or in equity for the revocation of any contract.

9 U.S.C. §2(2010).

New York CPLR Section 7503 provides in relevant part:

"§7503.  Application to compel or stay arbitration; stay of action; notice of intention to arbitrate.

(a)  Application to compel arbitration; stay of action.  A party aggrieved by the failure of another to arbitrate may apply for an order compelling arbitration.  Where there is no substantial question whether a valid agreement was made or complied with, and the claim sought to be arbitrated is not barred by limitation under subdivision (b) of Section 7502, the court shall direct the parties to arbitrate.  Where any such question is raised, it shall be tried forthwith in said court.  If an issue claimed to be arbitrable is involved in an action pending in a court having jurisdiction to hear a motion to compel arbitration, the application shall be made by motion in that action.  If the application is granted, the order shall operate to stay a pending or subsequent action, or so much of it as is referable to arbitration. "

New York CPLR Section 7512 provides in relevant part:

"§ 7512. Death or incompetency of a party.

Where a party dies after making a written agreement to submit a controversy to arbitration, the proceedings may be begun or continued upon the application of, or upon notice to, his executor or administrator or, where it relates to real property, his distributee or devisee who has succeeded to his interest in the real property. Where a committee of the property or of the person of a party to such an agreement is appointed, the proceedings may be continued upon the application of, or notice to, the committee. Upon the death or incompetency of a party, the court may extend the time within which an application to confirm, vacate or modify the award or to stay arbitration must be made. Where party has died since an award was delivered, the proceedings thereupon are the same as where party dies after a verdict."

Agreements, such as the one at issue here, have been enforced in this Court and in the

New York Courts.

**B.      Both the Petitioner and the Estate's Claims are Within the Scope of the Arbitration Agreement.**

Section 4 of the FAA, 9 U.S.C. §4, authorizes the district court to order a recalcitrant

party to arbitrate a controversy pursuant to the terms of a written arbitration agreement. The

statute provides in relevant part:

> A party aggrieved by the alleged failure, neglect or refusal of
> another to arbitrate under a written agreement for arbitration may
> petition any United States district court which, save for such
> agreement, would have jurisdiction under Title 28 in a civil action
> or in admiralty of the subject matter of a suit arising out of the
> controversy between the parties, for an order directing that such
> arbitration proceed in the manner provided for in such agreement.

9 U.S.C. §4 (2010).

See also CPLR Section 7503, supra.

The FAA, as well as New York law, reflects the strong public policy favoring

arbitration of disputes -- a policy that requires that any doubt be resolved in favor of arbitration.

See, e.g., Kramer v. Hammond, 943 F. 2d 176, 178 (2d Cir. 1991) (observing that there is a

strong presumption in favor of arbitration); Smith Barney Shearson Inc. v. Sacharow, 91 N.Y.

2d 39, 46, 666 N.Y.S. 2d 990 (1997) (same). As the United States Supreme Court held in Moses

H  Cone Mem'l Hosp. v. Mercury Construction Corp., 460 U.S. 1, 103 S. Ct. 927 (1983):

> The Arbitration Act establishes that as a matter of Federal Law,
> any doubts concerning the scope of arbitrable issues should be
> resolved in favor of arbitration, whether the problem at hand is the
> construction of the contract language, itself or any allegation of
> waiver, delay, or a like defense to arbitrability.

Moses H. Cone, 460 U.S. at 25-26; S.A. Mineracao da Trinidad-Samitri v. Utah Intl, Inc., 745

F. 2nd 190, 194 (2d Cir. 1984) (holding that "arbitration should be ordered 'unless it may be

said with positive assurance that the arbitration clause is not susceptible of an interpretation that

covers the asserted dispute").

5

The United States Supreme Court has emphasized a strong preference for arbitration, See, e.g., Rodriguez de Ouijas v. Shearson/Lehman Bros., 845 F. 2d 1296 (5th Cir.), affd, 490 U.S. 477, 109 S. Ct. 1917 (1989); Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 107 S. Ct. 2332 (1987); Dean Witter Reynolds v. Byrd, 470 U.S. 213, 218, 105 S. Ct. 1238 (1985) ("By its terms, the [Arbitration] Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed").

## POINT II

### UNDER NEW YORK LAW
### THE SILVER'S ESTATE IS BOUND BY
### DECEDENT'S AGREEMENT TO ARBITRATE

Under New York law, "[a] decedent's agreement to arbitrate a controversy is binding on the representative of the decedent's estate." Matter of Kalikow, 58 A.D.3d 846, 848, 872 N.Y.S.2d 511, 512-13 (2d Dep't. 2009); see also, Buccini v. Paterno Constr. Co., 253 N.Y. 256, 259-60, 170 N.E. 910, 912 (1930) ("It is a presumption of law, in the absence of express words, that the parties to a contract intend to bind not only themselves, but their personal representatives. Arbitration is a means for the settlement of differences. Those who succeed to the differences succeed also to the means"). Accord, Matter of the Estate of Cassone, 63 N.Y. 2d 756, 480 N.Y.S.2d 317 (1984); Kolmer-Marcus, Inc. v. David E. Winer, as Executor, 26 N.Y. 2d 795, 309 N.Y.S. 2d 220 (1970); Crewe, et al. v. Rich Dad Education, LLC, et al., 884 F. Supp. 2d 60 (S.D.N.Y. 2012); Gwertzman, et al. v. Gwertzman, Pfeffer, Tokar & Lefkowitz, et al., 1988 WL 138149 (S.D.N.Y. December 12, 1988); Matter of Lasky (Styne), 1999 WL 34572728 ((Surrogates Court, NY County March 29, 1996); Matter of Liebeskind v. Park Avenue Radiologists P.C., et al, 2008 WL 4699453 (Surrogates Court, Nassau County September 30, 2008).

In Gwertzman, supra, a diversity case, Judge Keenan held that the Estate of Max Gwertzman was bound to an arbitration clause, citing CPLR Section 7503 in respect of an accounting of partnership assets in which Mr. Gwertzman was a partner, to wit:

> "The majority of claims made by the plaintiff in the complaint allege violations of the [Partnership Agreement. This Agreement contains an **arbitration** clause which provides that the partners will **arbitrate** "any dispute arising at a time when Gwertzman shall not be managing partner...." *See* Partnership Agreement at 14. The threshold question the Court must answer is whether a valid agreement to **arbitrate** the controversy was made. *See* Practice Commentary 1 to CPLR § 7503. The Court of Appeals of New York has established that the basic function of the court is to perform a screening process to determine whether the parties agreed that the subject matter in dispute should be **arbitrated**. Once this is done, the court's inquiry ceases. *See Nationwide Gen, Ins. Co. v Investors Ins Co. of Amer...* 37 [N.Y 2d 91 96 (1975). A plain language reading of the **arbitration** clause leads to the conclusion that the parties entered into a valid agreement to **arbitrate** any disputes arising from that agreement."

In Liebeskind, supra, the Surrogates Court bound the parties to arbitrate the issue of ownership of the stock of a corporation in which decedent had an interest and stayed the Discovery Proceeding holding, in part, that:

> "The Court of Appeals has held that **arbitration** is strongly favored (Stark v. Molog, 9 NY 2d 59 [2007]). Thus, courts should interfere as little as possible with the freedom of consenting parties to arbitrate (Matter of 166 Mamoroneck Ave. Corp. v. 151 E. Post Rd., 78 NY 2d 88 [1991]). When faced with a broad arbitration clause, the only inquiry for the court to make is whether there is a reasonable relationship between the subject matter of the dispute and the underlying contract (Matter of Board of Educ. Of Waterfront City School Dist, 93 NY2d 132 [1999]). Historically, public policy precluded the arbitration of a dispute concerning the probate or construction of a will, but this prohibition does not extend to all disputes that impact upon the distribution of a decedent's estate (*Matter of Spanos*, NYLJ, Sept. 23, 1992 at 27, col [Sur. Ct., Nassau County]; *Matter of Kalikow*, 13 Misc. 3d 1222A [Sur. Ct., Nassau County, 2006]). Where the decedent is a party to the agreement, issues concerning termination of the agreement (Matter of Cassone, 63 NY 2d 756 [1984] or its enforcement (*Matter of Salaway*, NYLJ, April 12, 2004 at 31, col 1 [ Sur Ct., Suffolk County]) are subject to arbitration. The court must only consider: (1) whether the parties agreed to arbitrate the subject matter in dispute and (2) whether this particular dispute is encompassed within an **arbitration** clause (*Matter of Spectrum Glen Cove Corp. v. Legend Yacht and Beach Club*, 18 Misc 3d 1146 [ Sup. Ct., Nassau County 2008]). In the instant case, Doreen

and Arie, as signatories to the 2004 Agreement, agreed to arbitrate disputes arising under that agreement. Their **estates**, therefore, are bound by the agreement to arbitrate. The only issue is whether this dispute over retirement benefits and insurance process constitutes a dispute arising under the 2004 agreement and, therefore, is subject to **arbitration**.

The court agrees with the respondent that the issues presented in the discovery proceedings are subject to arbitration since entitlement to the retirement benefits and insurance proceeds are issues which are necessarily and logically dependent on a determination of who owns Park Avenue."

The decision of the Surrogates Court, New York County in the Matter of Lasky (Styne),

1996 WL 34572728 (Surrogates Court, NY County March 29, 1996) is to the same effect.

## POINT III

## THIS COURT MUST STAY THE SURROGATES COURT DISCOVERY PETITION INSOFAR AS IT SEEKS TO LITIGATE ANY AND ALL ISSUES REGARDING THE PARK AVENUE PROPERTY WHICH IS THE SUBJECT OF THE DECEMBER 1999 AGREEMENT BETWEEN PETITIONER AND SILVERS

As Petitioner's claims against the Estate of Silvers are arbitrable, Section 3 of the FAA

requires this Court to stay the Surrogates Court Discovery Petition and order Plaintiff's claims to

arbitration. Section 3 provides in relevant part:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on applicable of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement.

9 U.S.C. §3 (2010). The same is true under CPLR §7503. See Gwertzman, supra; Liebeskind,

supra.

There is no discretionary authority in a court to decide whether or when to stay an

8

action and order arbitration. Rather, the court need only satisfy itself that "the issue involved in such suit or proceeding is referable to arbitration under such an agreement...." Id. Once that determination has been made, the court is required to compel arbitration and stay the action. Byrd, 470 U.S. at 218 (explaining that the FAA mandates that district courts "shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed").

Accordingly, this court must stay the Discovery Proceeding in the Surrogates Court and order Petitioner's claims to arbitration pursuant to the arbitration provisions contained in the Agreement and applicable case law.

**CONCLUSION**

For the reasons set forth herein, it is respectfully requested that this Court compel arbitration of all of Petitioner's claims against Silvers and stay the proceeding in the Surrogates Court which deal with or affect the New York property.

Dated: New York, New York
July 31, 2017

LICHTER GLIEDMAN OFFENKRANTZ PC

By:_____

Ronald J. Offenkrantz, Esq. (1334)
Attorneys for JOHN RADZIWILL,
 individually and as sole heir of the
 late Lady Grace Maria Countess of Dudley
551 Fifth Avenue – 24th Floor
New York, NY 10176
(212) 867-7750
Email: rjo@lgofirm.com

**TO:**    Mr. Rea S. Hederman, as Executor
5 St. Luke's Place
New York, NY 10014

Lauren E. Aguiar
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, NY 10036-6522

## UNREPORTED CASES
(Westlaw)


Gwertzman, et al. v. Gwertzman, Pfeffer, Tokar & Lefkowitz, et al.
    1988 WL 138149 (S.D. N.Y. December 12, 1988)


Matter of Lasky (Stync),
    1999 WL 34572728 (Surrogates Court, NY County March 29, 1996)


Matter of Liebeskind v. Park Avenue Radiologists P.C, et al,
    2008 WL 4699453 (Surrogates Court, Nassau County September 30, 2008)

WESTLAW

1988 WL 138149
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.,

Gwertzman v. Gwertzman, Pfeffer, Tokar & Lefkowitz
United States District Court, S.D. N.Y. Adelaide G. GWERTZMAN, as Personal Representative of the Estate of
Max Gwertzman, Plaintiff,

v.

GWERTZMAN, PFEFFER, TOKAR & LEFKOWITZ, a New York
partnership, Milton Pfeffer, Ellen Lefkowitz, Morton Greenwald, Roberta
Burman and Alfred Tokar, Defendants.

No. 87 CIV. 6824 (JFK).
Dec. 12, 1988.

## Attorneys and Law Firms

Fine, Tofel, Saxl & Berelson, P.C., New York City (Burton M. Fine, David B. Newman, of counsel), for plaintiff.

Bower & Gardner, New York City (Nancy Ledy Gurren, Robert Iscaro, of counsel), for defendants.

*OPINION and ORDER*

KEENAN, District Judge:

*BACKGROUND*

*1 Defendants move to compel arbitration pursuant to Fed.R.Civ.P. 12(b) and CPLR § 7503. Defendants also move to disqualify plaintiff's counsel pursuant to Canons 4, 5 and 9 of the New York Bar Association Code of Professional Responsibility. Plaintiff, Adelaide Gwertzman, in her capacity as personal representative of the estate of Max Gwertzman, brought this action on September 22, 1987. She is seeking an accounting of assets of the defendant partnership, reimbursement for all sums due to plaintiff estate, interest, costs, attorneys' fees and punitive damages. The defendant, Gwertzman. Pfeffer, Tokar and Lefkowitz, (the "Partnership") is a law partnership formulated in 1983 for the purpose of the practice of law in New York State. Max Gwertzman ("Gwertzman") was the managing partner of the Partnership from December, 1983, until his death on March 1, 1987. In December, 1983, the defendant and Gwertzman executed a written Partnership Agreement which set forth the terms of the Partnership. The Partnership Agreement contained an arbitration clause which provided that:

Any dispute arising under, out of or in connection with this Agreement or, any breach hereof, shall be determined and settled by Gwertzman so long as he shall be the managing partner. Any dispute arising at a time when Gwertzman shall not be managing partner shall be determined by arbitration....

Plaintiff is seeking an accounting of the Partnership's assets and decedent's share of the Partnership assets pursuant to New York Partnership Law § 73. Plaintiff is also seeking repayment of loans made by decedent to the Partnership, reimbursement for disbursements advanced for and on behalf of the Partnership, and payment to estate of the decedent's unpaid partnership draw, pursuant to the Partnership Agreement. Defendants now move to compel arbitration based on the Partnership Agreement. Defendants also move to disqualify plaintiff's attorney from the case at bar, alleging that plaintiff's attorney was retained by the Partnership to prepare, negotiate, and draft the Partnership Agreement which is the subject of the present controversy.

*DISCUSSION*

SELECTED TOPICS

Mutual Rights, Duties, and Liabilities of Partners

Receiving and Spending Co-partner Share of Partnership Proceeds

Secondary Sources

s 122:2.   Exceptions to general rule of judicial noninterference

20B Carmody-Wait 2d § 122:2

...The general rule that an action at law normally may not be maintained by one partner against another for any claim arising from the partnership until there has been a full accounting was adopted becaus...

APPENDIX N.   Forms of Complaints By and Against Partnerships

1 N.Y. Prac., New York Limited Liab Companies and Partnerships Appendix N

...The document citation is not available at this time

s 122:72.   Effect of dissolution-Fiduciary relationship between partners

20B Carmody-Wait 2d § 122:72

...Although, upon dissolution, the partnership is not terminated but continues until the winding up of partnership affairs is completed, the fiduciary relation between partners terminates upon notice of d...

See More Secondary Sources

Briefs

Brief and Special Appendix for Plaintiff-Appellant-Cross-Appellee

2014 WL 6721604
Judy W. SOLEY, Plaintiff-Appellant-Cross-Appellee, v. Peter J. WASSERMAN, Defendant-Appellee-Cross-Appellant
United States Court of Appeals, Second Circuit
Nov. 20, 2014

...FN1. "A _" refers to the Joint Appendix. "SPA _" refers to the Brief and Special Appendix for Plaintiff-Appellant-Cross-Appellee. "D _" refers to the docket entry in this action. Standard of Review. Th...

Brief of the Plaintiffs-Appellants

2002 WL 34356863
Michael J. MORRIS and Associates, Plaintiffs-Appellants, v. David J. CRAWFORD, Defendant - Respondent.
Supreme Court, Appellate Division, Third Department
Nov. 12, 2002

...FN1. At the time Mike Morris entered into the Partnership Agreements with Crawford and Decker, Morris Associates had a large amount of outstandi ?? receivables for work performed for Mike Morris or bus...

Brief for Defendants-Respondents

2008 WL 5599552
6D FARM CORPORATION, Plaintiff-Appellant, v. Patrick J. CARR and Elena Duke Benedict, as Managing General Partner of Benedict Dairy Farms, Defendants-Respondents.
Supreme Court, Appellate Division, Second

1. *Motion to Compel Arbitration*

CPLR § 7503(a) provides that

'Application to compel arbitration; stay of action. A party aggrieved by the failure of another to **arbitrate** may apply for an order compelling **arbitration**. Where there is no substantial question whether a valid agreement was made or complied with, and the claim sought to be arbitrated is not barred by limitation under subdivision (b) of Section 7502, the court shall direct the parties to **arbitrate** ....

The majority of claims made by the plaintiff in the complaint allege violations of the Partnership Agreement. This Agreement contains an **arbitration** clause which provides that the partners will **arbitrate** 'any dispute arising at a time when Gwertzman shall not be managing partner....' *See* Partnership Agreement at 14. The threshold question the Court must answer is whether a valid agreement to **arbitrate** the controversy was made. *See* Practice Commentary 1 to CPLR § 7503. The Court of Appeals of New York has established that the basic function of the court is to perform a screening process to determine whether the parties agreed that the subject matter in dispute should be **arbitrated**. Once this is done, the court's inquiry ceases. *See Nationwide Gen. Ins. Co. v. Investors Ins. Co. of Amer.*, 37 (N.Y.2d 91, 96 (1975). A plain language reading of the **arbitration** clause leads to the conclusion that the parties entered into a valid agreement to **arbitrate** any disputes arising from that agreement.

*2 Plaintiff argues that the estate is not subject to the **arbitration** clause because the clause was meant to apply to disputes arising among the remaining partners after the decedent was no longer a partner. The Court does not adopt this view. The only condition specified, in settling any *disputes* arising from the Agreement by means of **arbitration**, was that Gwertzman was no longer a managing partner. Plaintiff's claim that Gwertzman's **death**, while still a partner, was not contemplated when the partners entered into the Agreement, is ill-founded. In fact, Article V. Sec. B of the Partnership Agreement provides for the management of the firm after "**death**, retirement, or withdrawal from the firm of Gwertzman."

It is clear that there is a strong public policy towards encouraging **arbitration**. Broadly and generally phrased **arbitration** clauses should therefore be afforded the full import of their wording in order to implement the intention of the parties. *Pepsi–Cola Metropolitan Bottling Co.. Inc. v. Columbia–Oxford Beverages, Inc.*, 100 A.D.2d 868, 869 (2d Dep't 1984); *Matter of Fredonian Realty Corp. [Presidential Towers Residence]*, 49 A.D.2d 816, 817, *aff'd*, 40 N.Y.2d 897 (1976); *Bayly, Martin, & Fay v. Glaser*, 92 A.D.2d 850, 851 (1st Dep't 1982), *aff'd*, 60 N.Y.2d 577 (1983).

Plaintiff may be entitled to an accounting of the assets of the Partnership pursuant to § 73 of the New York Partnership Law. Upon the **death** of a partner, an accounting is due the executor of the partner's estate. *Jacobson v. Feingold*, 261 A.D. 854, 119 N.Y.S.2d 429 (1st Dep't 1953); *In re Shubert's Will*, 1 A.D.2d 654 (1st Dep't 1955), *aff'd*, 1 A.D.2d 914 (1956). However, in an accounting action, the accounting itself may not take place until the plaintiff has established the right to it in the liability phase of the trial. *Nishman v. DeMarco*, 76 A.D.2d 360, 430 N.Y.S.2d 339, 344 (2d Dep't 1980), *dismissed on other grounds*, 53 N.Y.2d 642 (1981); *Kaminsky v. Kahn*, 23 A.D.2d 231, 241 (1st Dep't 1965). In the case at bar, an issue clearly in dispute is whether the decedent has an interest in the Partnership. Defendant disputes the fact that Gwertzman or plaintiff have interests in the Partnership. *See* Affidavit of Burton M. Fine at ¶ 5. The Court finds that this dispute should be **arbitrated**. The Court will submit a dispute to **arbitration** once it appears that there is a reasonable relationship between the subject matter in dispute and the general subject matter of the underlying contract. *Nationwide Gen. Ins. Co. v. Investors Ins. Co.* 37 N.Y.2d 91, 96 (1975). Here, the the subject matter of plaintiff's claims is reasonably related to the general subject matter of the underlying Partnership Agreement which contains a broad **arbitration** agreement.

The relief sought by the plaintiff is not within the exclusive control of the Court. The relief sought is dependent upon an interpretation of the Partnership Agreement which is an arbitratable matter. Where jurisdiction over a particular type of dispute is statutorily within the exclusive control of the Court, or where judicial enforcement of particular rights is mandated by public policy, an agreement to **arbitrate** will not be given effect by the courts. Otherwise where no such conflict with law or public policy exists, the courts will enforce the parties' contractual decision to submit their disputes to **arbitration**. *See Maross Construction, Inc. v. Central N.Y. Regional Transp. Auth.*, 66 N.Y.2d 341, 345–346 (1985). Moreover, an

Department
May 19, 2006

FN1. The argument in the Appellant's brief that the alleged breaches were 'continuing' wrongs that caused endless tolling is not only incorrect. it is a new theory not alleged in the complaint or argue...

See More Briefs

**Trial Court Documents**

Abood v. Metro Lace Co., Inc.

2012 WL 10007870
Michel R. ABOOD and Claude Abood, individually and doing business as Novel Knit, Inc., Plaintiffs, v. METRO LACE COMPANY, INC., Francisco J. Lopez, a/k/a Frank Lopez John A. Titone and Rosenthal & Rosenthal, Inc., Defendants.
Supreme Court, New York.
July 26, 2012

...MOTION SEQ. NO. 002 The following papers, numbered 1 to _ were read on this motion to/for _ Cross-Motion: X Yes No Upon the foregoing papers. it is ordered that this motion MOTION AND CROSS MOTION(S)

Dunne v. Obstetrics

2010 WL 3499392
Julianne DUNNE M.D., Plaintiff, v. White Plains OBSTETRICS & Gynecology Associates, LLP, Nabil Khoury, M.D., F. Michael Shew, M.D., Jacqueline Bavaro, M.D., and White Plains Obstetrics & Gynecology Partners, LLP, Defendants.
Supreme Court, New York.
June 30, 2010

...Motion Date: April 23, 2010 Schenkman, J: In this action arising from the breakup of a medical practice, Defendants Nabil Khoury ('Khoury'), Jacqueline Bavaro, ('Bavaro') and White Plains Obstetrics ...

Vilkelis v. Holmes

2011 WL 575062
William VILKELIS, Plaintiff, v. Catherine HOLMES, Thomas Holmes, Jeff Goodman and The Holmes Team, Defendants
Supreme Court, New York
Feb. 03, 2011

...[This opinion is uncorrected and not selected for official publication.] PART 7 The following papers were read on this motion by defendants to dismiss the complaint. Cross-Motion: Yes X No For conveni...

See More Trial Court Documents

arbitrator is invested with judicial functions and may decide issues of law. *See Exercycle Corp. v. Maratta*, 9 N.Y.2d 329, 336–37 (1961).

*3 **Arbitration** is the appropriate forum for this dispute to be settled. The relief sought by plaintiff cannot be granted until a right to an accounting is demonstrated by the plaintiff. In addition, a determination must be made as to what profits, assets, disbursements or purported loans the estate may hold pursuant to the Partnership Agreement. These issues are closely connected and an **arbitrator** is empowered to provide the relief sought.

### 2. *Motion to Disqualify Plaintiff's Counsel*

Defendant also seeks to disqualify plaintiff's counsel, Fine, Tofel, Saxl & Berelson ("Fine, Tofel"), pursuant to Canons 4, 5 and 9 of the New York Bar Association Code of Professional Responsibility. In considering a motion for disqualification a court must balance a client's right to choose his counsel with "the need to maintain the highest standards of the profession." *See Government of India v. Cook Industries, Inc.*, 569 F.2d 737, 739 (2d Cir.1978).

Canon 4 concerns the attorney's obligation to preserve the confidences and secrets of a former client in the wake of the attorney's representation of a present client. *See Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 748 (2d Cir.1981). The test governing Canon 4 has been articulated by the Court of Appeals for the Second Circuit which stated:

an attorney may be disqualified from representing a client in a particular case if

(1) the moving party is a former client of the adverse party's counsel;

(2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and

(3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client.

*Evens v. Artek Systems Corp.*, 715 F.2d 788, 791 (2d Cir.1983) (quoting *Cheng v. GAF Corp.*, 631 F.2d 1052, 1065–56 (2d Cir.1980), *judgment vacated on other grounds*, 450 U.S. 903 (1931)).

In the present case, the parties dispute whether the defendant Partnership had an attorney-client relationship with Fine, Tofel. The affidavits submitted by both parties indicate that Stuart Berelson, a partner in Fine, Tofel, was initially Gwertzman's attorney and handled his personal and estate matters. When Gwertzman began contemplating the formation of the Partnership, Berelson drafted a personal memorandum to Gwertzman regarding the Partnership. Berelson attended the first meeting of the potential partners of Gwertzman, Pfeffer held at the Fine, Tofel offices, at which time preliminary matters surrounding the formation of the Partnership were discussed. No other partners had independent counsel and there was no discussion as to whether they should retain such counsel. There is no indication that Fine, Tofel ever affirmatively confirmed or denied that they represented the Partnership as a whole. Thereafter, David Rosen, then a Fine, Tofel partner, handled the preparation of the Partnership Agreement and communicated with defendant Ellen Lefkowitz as to that preparation. Eventually, a bill for these services was sent to Gwertzman who paid the bill. It is also undisputed that the Partnership did not legally exist at the time that bill was rendered. Mr. Rosen left Fine, Tofel in October 1986.

*4 Plaintiff argues that Mr. Berelson always considered himself Gwertzman's private counsel and never the Partnership's counsel. Mr. Berelson states that he has only a vague recollection of that initial meeting and argues that Fine, Tofel, through David Rosen, merely acted as a "scrivener" for the Partnership. *See* Affidavit of Stuart E. Berelson. Defendants contend, however, that it was understood that Fine, Tofel represented the Partnership and that Fine, Tofel would have access to confidential information regarding the formation of the Partnership and the drafting of the Partnership Agreement.

In light of the evidence above, the Partnership could be considered a former client of Fine, Tofel's. The evidence indicates that Fine, Tofel was the only counsel involved in the drafting and preparation of the Partnership Agreement and that Fine, Tofel communicated with Ellen Lefkowitz as well as with Gwertzman.

As to the second prong of the test, there is little doubt that the present suit centers upon the interpretation of the Partnership Agreement which Fine, Tofel participated in drafting. The third prong relating to access to confidential information does not require a showing that

specific information was received. *See NCK Org'n Ltd. v. Bregman*, 542 F.2d 128, 134 (2d Cir.1976). In this case, defendants have made a sufficient showing that Fine, Tofel had access to confidential information regarding the preparation of the Partnership Agreement, upon which this action is based.

Defendants also assert that Canon 9 applies in this case. Canon 9 provides that an attorney must avoid even "the appearance of impropriety." Although an appearance of impropriety alone will not warrant disqualification in this case, such an appearance coupled with a violation of Canon 4 would lead this Court to conclude that disqualification is appropriate.

### CONCLUSION

For the foregoing reasons, defendants' motions are granted and the parties are to proceed to **arbitration**. Plaintiff's counsel, Fine, Tofel is also disqualified from representing plaintiff in this case. This action is hereby dismissed and is to be removed from the active docket of this Court.

SO ORDERED.

### All Citations

Not Reported in F.Supp., 1988 WL 138149

End of Document                © 2017 Thomson Reuters. No claim to original U.S. Government Works.

Westlaw. © 2017 Thomson Reuters    Privacy Statement    Accessibility    Supplier Terms    Contact Us    1-800-REF-ATTY (1-800-733-2889)    Improve Westlaw    THOMSON REUTERS

WESTLAW

Original Image of 1996 WL 34572728 [PDF]

1996 WL 34572728 (N.Y.Sur.) (Trial Order)

Surrogate's Court of New York.

New York County

Styne v. Dicker

Surrogate's Court of New York.   March 29, 1996   *(Approx. 2 pages)*

Application of Floria V. Lasky and Margaret Styne, as Co-Executrixes of the Estate of Jule STYNE, Petitioners,

v.

Dorothy DICKER and American Arbitration Association, Respondents.

No. 4908/94.

March 29, 1996.

**Trial Order.**

Preminger, Judge.

For an Order Pursuant to Article 75 of the CPLR Staying Arbitration of the File No. 4908/94 Arbitration Demand against the Estate of Jule STYNE, deceased,

PREMINGER, S.

This is an application by two of the three co-executors to stay an arbitration commenced by the other co-executor, respondent Dorothy Dicker ("Dicker"), against the estate.

Decedent was a well known composer of music for theater and movies. The major assets of his estate are the copyrights for the music and the royalties derived therefrom. Dicker acted as decedent's personal assistant for 38 years. In October 1995 Dicker filed a demand for arbitration of her claim against the estate for 15% of the royalty income, pursuant to the arbitration clause of a purported Personal Management Agreement with decedent. Petitioners timely moved to stay arbitration pursuant to CPLR 7503(b) on the grounds that (i) Dicker's claim is not subject to arbitration, and (ii) no valid agreement to arbitrate exists.

The Court rejects petitioners' argument that Dicker's claim is not arbitrable because permitting arbitration against an estate violates public policy and the mandate of SCPA 1805. Under CPLR 7512,

"Where a party dies after making a written agreement to submit a controversy to arbitration, the proceedings may be begun or continued upon the application of, or upon notice to, his executor or administrator..."

It is thus clear that an executor, who stands in the shoes of his decedent, is bound by decedent's agreement to arbitrate a dispute arising under a contract. (*See, Reliance Drug Co. v. Finke,* 39 AD2d 580; *Kohner-Marcus, Inc. v. Winer,* 32 AD2d 763, affd **26 NY2d 795**). Nothing in SCPA 1805, which requires court approval in an accounting proceeding before a fiduciary may pay himself a debt allegedly owed to him by decedent, prohibits arbitration of a fiduciary's claim against an estate.

The issue of whether a valid agreement to arbitrate was made between Dicker and decedent must be determined by the Court in the first instance and not the arbitrator. (CPLR 7503[a]). Dicker has produced two undated agreements allegedly signed by decedent in the 1960's, which contain broad arbitration clauses and utilize a standard form of personal management contract. Petitioners contend that (i) decedent's signatures on the agreements are forged, and (ii) even if the signatures are valid, the documents themselves are fraudulent because the signatures were "cut and pasted" on copies of the standard printed forms.

The Court concludes from a review of the record that factual issues exist which require a trial. The affidavit of petitioners' handwriting expert points to several alleged irregularities in

**SELECTED** TOPICS

Alternative Dispute Resolution

Waiver of Construction Contract Arbitration Provision

**Secondary Sources**

Causes of Action Involving Arbitrable Disputes

32 Causes of Action 2d 385 (Originally published in 2006)

...Arbitration is too often thought of as a black or white situation: either a matter is arbitrable (and, thus, fully heard by an arbitrator) or it is a cause of action (to be heard by a judge in court). ...

s 27:2. Arbitration-Agreement to arbitrate

28A N.Y. Prac., Contract Law § 27:2

...Arbitration is a creature of agreement. It essentially is an agreement by which the parties charter a private tribunal for the resolution of their disputes. Alternative procedures for resolving dispute...

s 27:10. Arbitration-The FAA

28A N.Y. Prac., Contract Law § 27:10

...The Federal Arbitration Act (the "FAA") is intended to promote enforcement of private agreements to arbitrate disputes. Where a contract containing an arbitration provision "affects" interstate commerce...

See More Secondary Sources

**Briefs**

Brief Amicus Curiae of Pacific Legal Foundation In Support of Petitioners

2015 WL 8300489
MHN GOVERNMENT SERVICES, INC., et al., Petitioners, v. Thomas ZABOROWSKI, et al., Respondents.
Supreme Court of the United States
Dec. 02, 2015

...Pursuant to Supreme Court Rule 37, Pacific Legal Foundation respectfully submits this brief amicus curiae in support of Petitioner, MHN Government Services, Inc. Founded in 1973, Pacific Legal Foundati...

Brief for Petitioner

1974 WL 185850
Fritz SCHERK, Petitioner, v. ALBERTO-CULVER COMPANY, Respondent.
Supreme Court of the United States
Mar. 07, 1974

...The majority and dissenting opinions of the United States Court of Appeals for the Seventh Circuit are reported officially at 484 F.2d 611, and unofficially at [1973 Transfer Binder] CCH Fed. Sec. L. R...

Motion For Leave To File And Amicus Curiae Brief For The American Health Care Association And The National Center For Assisted Living, Genesis Healthcare, Inc., And Diversicare Health Services, Inc. In Support Of Petitioners

2016 WL 355010
GGNSC GETTYSBURG LP, d/b/a Golden Living Center - Gettysburg; GGNSC Gettysburg GP, LLC; GGNSC Holdings, LLC; Golden Gate National Senior Care, LLC,

the purported agreements, and serious questions are also raised by the affidavits of decedent's longtime attorney and accountant, neither of whom made aware of the claim of an existing written management agreement until Dicker filed her arbitration claim.

Accordingly, petitioners' application to stay arbitration is granted to the extent that arbitration is stayed pending determination at trial of the issues herein. The parties are directed to complete all discovery within sixty (60) days of the date of this order. A pre-trial conference shall be scheduled upon the filing of a Note of Issue.

This shall constitute the decision and order of the Court.

<<signature>>

SURROGATE

Dated: March 24, 1996

End of Document

© 2017 Thomson Reuters. No claim to original U.S. Government Works.

GGNSC Equity Holdings, LLC; and GGNSC Administrative Services, LLC, Petitioners, v. Evonne K. WERT, Executrix of the Estate of Anna E. Kepner, Deceased, Respondent. Supreme Court of the United States. Jan. 21, 2016

...Pursuant to Supreme Court Rule 37.2(b), the American Health Care Association and the National Center for Assisted Living, Genesis Healthcare, Inc., and Diversicare Healthcare Services, Inc. respectful...

See More Briefs

**Trial Court Documents**

Bottoms v. World Class Learning Academy of New York, LLC

2013 WL 3958646
Sarah BOTTOMS, Plaintiff, v. WORLD CLASS LEARNING ACADEMY OF NEW YORK, LLC, British Schools of America, LLC, and John Taylor and Dawn Taylor, Defendants.
Supreme Court, New York.
July 30, 2013

...HON. ANIL C. SINGH, J.: In motion sequence 001, brought pursuant to CPLR 7503 (b) and 7502 (a), plaintiff Sarah Bottoms moves to stay the arbitration sought by defendants World Class Learning Academy o...

Valenzuela v. Central Parking Systems Mexico

2006 WL 5157659
Roberto VALENZUELA and Manuel Pena, Petitioners, v. CENTRAL PARKING SYSTEMS MEXICO a/k/a Central Parking System Mexico, S.A. De C.V., and International Centre for Dispute Resolution, a division of the American Arbitration Association, Respondents.
Supreme Court, New York.
Jan. 06, 2006

...[This opinion is uncorrected and not selected for official publication.] Oral Arg. Date July 20, 2005 Mot. Seq. No. 001 Mot. Cal. No. 29 Papers considered in review of this petition to dismiss or stay ...

Earnick Enterprises, Inc. v. Sterling Vision, Inc.

1998 WL 34571282
EARNICK ENTERPRISES, INC., Edgar Harry and Grece Henry, plaintiffs, v. STERLING VISION, INC. and Jerry Darnell, Defendants.
Supreme Court, New York.
Sep. 19, 1998

...IAS, PART 24) DATED Sept. 19, 1998 In this action based on claims of breach of contract and discrimination, defendants move for an order of this Court pursuant to the Federal Arbitration Act (9USC sec...

See More Trial Court Documents



WESTLAW

Original Image of 2008 WL 4699453 (PDF)

2008 WL 4699453 (N.Y.Sur.), 2008 N.Y. Slip Op. 32890(U) (Trial Order)

Surrogate's Court of New York.

Nassau County

Julie v. Park Avenue Radiologists P.C.

Surrogate's Court of New York.   September 30, 2008   *(Approx. 4 pages)*

Petition of Franklin H. JULIE, as Executor of the Estate of Arie L. Liebeskind, Deceased,

v.

PARK AVENUE RADIOLOGISTS P.C. and Dr. Albert V. Messina, to Discover Property Withheld and Belong to the Estate of Arie L. Liebeskind and to Stay Arbitration and against Marc Liebeskind, M.D. and Kitchen Table Associates, LLC, parties to said arbitration, Respondents;

Petition of Franklin H. Julie, as Executor of the Estate of Doreen S.P. Liebeskind, Deceased,

v.

Park Avenue Radiologists P.C. and Dr. Albert V. Messina, to Discover Property Withheld and Belong to the Estate of Arie L. Liebeskind and to Stay Arbitration and against Marc Liebeskind, M.D. and Kitchen Table Associates, LLC, parties to said arbitration, Respondents.

No. 350223.

September 30, 2008.

## West Headnotes (1)

Change View

1   Alternative Dispute Resolution ⚖ Disputes and Matters Arbitrable Under Agreement

Claims made by estates of former shareholders in radiology practice for certain retirement benefits and insurance proceeds were subject to mandatory arbitration pursuant to the terms of agreement between the shareholders of the practice; dispute arose under the agreement, as the resolution of estates' claims was dependent on a determination as to who owned the practice when former shareholders died.

[This opinion is uncorrected and not selected for official publication.]

John B. Riordan, Judge of the Surrogate's Court.

Before this court are two miscellaneous SCPA 2103 discovery proceedings commenced, by order to show cause, by Franklin H. Julie, as executor of the estates of Arie Liebeskind and Doreen Liebeskind. Doreen Liebeskind and Arie Liebeskind were husband and wife. Doreen Liebeskind died on March 16, 2007 leaving a will dated March 12, 2007, which was admitted to probate on May 24, 2007. Letters testamentary issued to Franklin H. Julie on that date. Arie Liebeskind died on January 22, 2008 leaving a will dated March 12, 2007, which was admitted to probate on February 28, 2008. Letters testamentary issued to Franklin H. Julie as executor of Arie's estate. Doreen and Arie were survived by three children, Marc Liebeskind ("Marc"), David S. Liebeskind and Elise Liebeskind Hotaling.

At one point in time, Doreen and Arie were shareholders in a radiology practice known as Park Avenue Radiologists, P.C. ("Park Avenue") together with Drs. Albert Messina ("Messina") and Gary Halpern. Petitioner, in his capacity as executor of each estate, has

### SELECTED TOPICS

Alternative Dispute Resolution

Arbitration
Existing Rule of Law or Equity

#### Secondary Sources

s. 150.  Observance by arbitrators of substantive and procedural rules

5 N.Y. Jur. 2d Arbitration and Award § 150

...Although an arbitrator, being a judicial officer, is generally bound by the rules applicable to such an officer, the strict rules governing actions are not applicable to proceedings before arbitrators, ...

s. 141:192.  Observance of substantive and procedural rules

23 Carmody-Wait 2d § 141:192

...An arbitrator, being a judicial officer, is bound by the rules that govern such an officer. However, the strict rules governing an action are not applicable to a proceeding before arbitrators, either i...

Arbitration Award Vacatur & Confirmation at Common Law-A 21st Century Option

112 Am. Jur. Trials 365 (Originally published in 2009)

...This article draws upon the holdings in virtually all published federal cases involving common-law arbitration and upon all the holdings in state high court cases from the late 18th century. The earlie...

See More Secondary Sources

#### Briefs

Reply Brief of Respondent-Appellant/Cross-Appellee

1996 WL 33474807
INTERNATIONAL TELEPASSPORT CORPORATION and USF of South Florida, Inc., Petitioners-Appellees/Cross-Appellants, v. USFI, INC., Respondent-Appellant/Cross-Appellee.
United States Court of Appeals, Second Circuit.
Apr. 08, 1996

FN1  Words are used herein as defined in the Brief of Respondent-Appellant/Cross-Appellee USFI, Inc., dated February 23, 1996 ("Appellant's Brief"). USFI does not contest Appellees' assertions that the...

Reply Brief of Respondent-Appellant/Cross-Appellee

1996 WL 33064528
INTERNATIONAL TELEPASSPORT CORPORATION AND USF OF SOUTH FLORIDA, Inc., Petitioners- Appellees/Cross-Appellants. v. USFI, INC., Respondent-Appellant/Cross-Appellee.
United States Court of Appeals, Second Circuit.
1996

...Respondent-Appellant/Cross-Appellee USFI respectfully submits this reply brief in response to the untenable assertions and arguments set forth in the Brief of Petitioners-Appellees/Cross-Appellants ITC...

Reply Brief of Respondent-Appellant/Cross-Appellee

commenced a separate discovery proceeding against Park Avenue and Messina seeking the recovery of retirement benefits he claims are being improperly denied to Doreen's estate and Arie's estate by Park Avenue at Messina's direction. In addition, the petitioner asks the court to stay the arbitration proceedings instituted by Messina against Marc and an entity known as Kitchen Table Associates. Messina has now moved for an order dismissing the petitions in their entirety, or, in the alternative, either staying the discovery proceedings until after final resolution of the ongoing arbitration proceedings, or transferring the petitions to the Supreme Court in New York County.

## BACKGROUND

It is undisputed that at some point in time Doreen, Arie, Messina and Dr. Halpern were all shareholders of Park Avenue Associates. At some point in time, Dr. Halpern left Park Avenue and reached an agreement with the remaining shareholders. MLLH Realty Corp. ("MLLH") and Imaging Services Company of New York, LLC are entities related to Park Avenue. Another entity, Kitchen Table Associates, is a limited liability company under which Marc derives a portion of his interest in MLLH and Imaging Services Company of New York MLLH was established to own the office space of the Park Avenue office. Imaging Services Company of New York, LLC was created to provide equipment, space, maintenance and administrative services to support Park Avenue.

In 2002, the shareholders of Park Avenue entered into an agreement with a broad arbitration clause designating the American Arbitration Association as the forum for arbitration of disputes arising under that agreement. That agreement was signed by Arie, Doreen, Messina and Dr. Halpern. Marc was not a signatory to the 2002 Agreement. In 2004, however, another shareholders' agreement was signed by Doreen, Arie, Marc and Messina. Dr. Halpern no longer possessed an interest in Park Avenue; and, therefore, was not a signatory to the 2004 Agreement. Paragraph 23 of the 2004 Agreement provides that "[a]ny dispute arising under this agreement shall be settled under the rules and auspices of the AHLA Alternate Dispute Resolution Service."

## PETITIONER'S ARGUMENT

Petitioner claims that in May 2006, Arie retired from Park Avenue. Arie, who had previously transferred a portion of his Park Avenue interests to Marc, transferred his remaining interests to Doreen at that time. On or about May 24, 2006, in accordance with Arie's wishes, Park Avenue transferred to Arie the ownership of life insurance which Park Avenue owned on Arie's life pursuant to the shareholders' agreement and changed the primary beneficiary to Doreen and the secondary beneficiary to Arie's children. Furthermore, on or about August 6, 2006, Arie transferred his 25% interest in MLLH Realty to Marc.

Similarly, petitioner alleges that in early 2007, Doreen retired from Park Avenue. Park Avenue transferred to Doreen ownership of two life insurance policies on her life, which in turn were transferred by her to an inter vivos trust. In January 2007, Doreen held a 50% ownership interest in Park Avenue, a 33-1/3% interest in HTC Imaging, PLLC and a 25% interest in MLLH. In January 2007, Doreen transferred 1% of her interest in MLLH to Marc and filed a gift tax return. Petitioner claims that Doreen then transferred all of her remaining interests in Park Avenue and the related entities, consisting of her 24% interest of MLLH, 50% of Park Avenue, 33-1/2% of HTC Imaging PLLC and 75% of Kitchen Table Associates LLC. to Marc for valuable consideration. Petitioner states that Marc signed a note obligating him to pay for the interest conveyed to him by Doreen. Arie, acting as Doreen's attorney-in-fact, signed the transfer documents. Thus, petitioner claims that, as a result of these transfers, neither Arie nor Doreen owned any shares in Park Avenue or the related entities at the time of their respective deaths, and that Marc, by virtue of these transfers, acquired their interests.

According to petitioner, pursuant to the provisions of the 2004 Agreement, Park Avenue is obligated to pay to each of Arie and Doreen (or their respective estates) retirement benefits of $100,000 per year up to $1,000,000. Petitioner contends that Messina has caused Park Avenue not to make these payments in retaliation for certain actions taken by Marc. On July 13, 2007, Marc commenced a proceeding in Supreme Court, New York County for dissolution of Park Avenue. After Marc commenced the dissolution proceeding, Messina served a Demand for Arbitration before the American Arbitration Association ("AAA"). Marc opposed the arbitration demand claiming that the parties were deadlocked on the issue, and, therefore, arbitration was barred. In addition, Marc argued that pursuant to the 2004 Agreement any arbitration had to be before the AHLA. By order entered December 31, 2007, Justice Louis B. York of the Supreme Court, New York County ordered that the dispute was

1996 WL 33664519
INTERNATIONAL TELEPASSPORT
CORPORATION and Usf of South Florida,
Inc., Petitioners- Appellees/Cross-
Appellants, v. USFI, INC., Respondent-
Appellant/Cross-Appellee
United States Court of Appeals, Second
Circuit
Apr. 08, 1996.

..Respondent-Appellant/Cross-Appellee
USFI respectfully submits this reply brief in
response to the untenable assertions and
arguments set forth in the Brief of Petitioners-
Appellees/Cross-Appellants ITC..

See More Briefs

### Trial Court Documents

Battaglia v. New York City Transit
Authority

1994 WL 16857144
Application of Warren BATTAGLIA Petitioner,
v. NEW YORK CITY TRANSIT AUTHORITY
Defendant.
Supreme Court, New York.
Mar. 04, 1994

..Petitioner Warren Battaglia ("Battaglia")
brings this Article 75 petition seeking vacatur
of the arbitration award rendered by the
Tripartite Arbitration Board ("the Board")
pursuant to a collective ba...

Ebewo v. New York City Dept. of Educ.

2011 WL 4133294
In the Matter of the Application of Michael
EBEWO, Petitioner, v. NEW YORK CITY
DEPARTMENT OF EDUCATION a/k/a the
City School District of the City of New York,
of Te City of New York, Respondent.
Supreme Court, New York.
Aug. 31, 2011

..[This opinion is uncorrected and not
selected for official publication ] The following
papers, numbered 1 to _ were read on this
motion to/for _ Cross-Motion: Yes No Upon
the foregoing papers, it is ...

Stolthaver Perth AMBOY, v. JLM
MARKETING.

2007 WL 2176327
Stolthaver Perth AMBOY, v. JLM
MARKETING.
Supreme Court, New York.
June 07, 2007

..[This opinion is uncorrected and not
selected for official publication.] Sequence
Number: 001 PART 35 INDEX NO
102559/07 MOTION DATE 522/07 MOTION
SEQ. NO. 001 MOTION CAL NO._ The
following papers, ...

See More Trial Court Documents

subject to arbitration but not before the AAA (per the 2002 Agreement) but instead before the AHLA pursuant to the 2004 Agreement.

Petitioner claims that Messina is using the arbitration forum to assert and have resolved claims, including a claim to the proceeds of life insurance, against Doreen's and Arie's estate which may only be made in Surrogate's Court. Petitioner argues that Messina's claims to the insurance proceeds should be heard in Surrogate's Court so that Arie and Doreen's other children, who are not parties to the arbitration, may be heard.

### RESPONDENT MESSINA'S ARGUMENT

Messina argues that the petitions should be dismissed and the court should decline to stay the arbitration. Messina contends that although the controversy appears rather complicated, there is essentially only one issue that must be decided and that is who owns Park Avenue. That dispute, per Justice York's decision, is subject to arbitration before the AHLA. Messina acknowledges that Marc claims to be an owner of Park Avenue and the related entities by virtue of transfers made by Arie and Doreen. Messina argues, however, that although Arie and Doreen might have had the right under the 2004 Agreement to make those transfers, the purported transfers were invalid and ineffective.

In addition, Messina argues that the issues in dispute in the SCPA discovery proceedings before this court are specifically included in the arbitration demand. If Arie and Doreen died owning shares at the time of their respective deaths as Messina contends, then, the 2004 Agreement provides that Park Avenue is entitled to buy back those shares at Messina's request. Messina claims that he has made such a request. The Agreement further provides that the buyout is to be funded by the life insurance proceeds on the policy purchased by Park Avenue. Thus, if it is determined that Doreen's shares are subject to buyback, then Doreen's estate is entitled to the insurance proceeds. If, however, Doreen did not die owning her shares, her estate is not entitled to the proceeds. Accordingly, a determination of the insurance issue depends on the result of the ownership dispute, which is subject to arbitration.

Messina also claims that the issue of whether Arie and Doreen are entitled to a retirement benefit from Park Avenue is dependent upon the outcome of the ownership issue. The retirement benefit issue is similarly determined by whether Arie or Doreen died owning shares of Park Avenue or by whether each of them sold back their shares and retired prior to death. Thus once a determination is made on the issue of ownership, the question of entitlement to retirement benefits is answerable under the provisions of the 2004 agreement. Accordingly, Messina argues that the estates are required to honor the agreements to arbitrate made by Doreen and Arie. In addition, he argues that the discovery proceedings are barred by res judicata and collateral estoppel, and, thus, the proceedings should be dismissed, or, at the very least, stayed pending the outcome of the arbitration.

Messina also contends that the branch of the order to show cause which seeks to stay the arbitration must be denied because it was not made within the 20-day period allowable under CPLR 7503(C). CPLR 7503( c) provides that "[a]n application to stay arbitration must be made by the party served within twenty days after service upon him of the notice or demand, or he shall be so precluded." Messina argues that neither Doreen's estate or Arie's estate (or Arie, when he was alive) moved for a stay within 20 days of being served with Messina's first demand for arbitration before the AAA in July 2007 nor within 20 days of service of the second demand for arbitration (the one before the AHLA) in January 2008. After the second demand was served, Messina filed a Supplemental and Amended Demand for Arbitration before the AHLA which was served in May 2008. Petitioner contends that this triggered a new 20-day period to move for a judicial stay. Messina argues, however, that a new 20-day period was not triggered by the Supplemental and Amended Demand, and, in fact, Messina points out that the AHLA specifically ruled that "[t]he Panel's permission to file such a pleading and filing of same does not reflect a finding as an admission, and shall not be used to argue that Demand for Arbitration dated January 3, 2008 was defective or deficient in any respect."

Additionally, Messina argues that the estates waived any right to seek a stay because the estates have actively participated in the arbitration. Messina claims that the estates have appeared in the arbitration, answered the demand, participated in selecting arbitrators, signed compensation agreements with arbitrators, provided deposits for fees, and appeared at multiple hearings, both in-person and by telephone.

In response to Messina's allegations regarding waiver, petitioner disputes that the estates' actions have constituted a waiver of their right to object to arbitration. Petitioner agues that Justice York's September 26, 2007 order specifically stated that "[t]he parties by participating in administrative matters before the AAA ... shall not be deemed to have waived any and all objections to arbitration before AAA or otherwise." Similarly, Justice York's October 12, 2007 interim order provided that "[t]his determination is without waiver of any of the respondents [sic] right to contest or object to such arbitration proceedings as is being considered at this time by this court."

### LEGAL ANALYSIS

The Court of Appeals has held that arbitration is strongly favored (*Stark v Molod*, 9 NY2d 59 [2007]). Thus, courts should interfere as little as possible with the freedom of consenting parties to arbitrate (*Matter of 166 Mamoroneck Ave. Corp. v. 151 E. Post Rd.*, 78 N.Y.2d 88 [1991]). When faced with a broad arbitration clause, the only inquiry for the court to make is whether there is a reasonable relationship between the subject matter of the dispute and the underlying contract (*Matter of Board of Educ. of Waterfront City School Dist.*, 93 N.Y.2d 132 [1999]). Historically, public policy precluded the arbitration of a dispute concerning the probate or construction of a will, but this prohibition does not extend to all disputes that impact upon the distribution of a decedent's estate (*Matter of Spanos*, NYLJ, Sept 23, 1992 at 27, col 1 [Sur Ct, Nassau County]; *Matter of Kalikow*, 13 Misc 3d 1222A [Sur Ct, Nassau County, 2006]). Where the decedent is a party to the agreement, issues concerning termination of the agreement (*Matter of Cassone*, 63 NY2d 756 [1984]) or its enforcement (*Matter of Safeway*, NYLJ, April 12, 2004 at 31, col 1 [Sur Ct, Suffolk County]) are subject to arbitration. The court must only consider: (1) whether the parties agreed to arbitrate the subject matter in dispute and (2) whether this particular dispute is encompassed within an arbitration clause (*Matter of Spectrum Glen Cove Corp. v. Legend Yacht and Beach Club*, 18 Misc 3d 1146 [Sup Ct, Nassau County 2008]).

In the instant case, Doreen and Arie, as signatories to the 2004 Agreement, agreed to arbitrate disputes arising under that agreement. Their estates, therefore, are bound by the agreement to arbitrate. The only issue is whether this dispute over retirement benefits and insurance proceeds constitutes a dispute arising under the 2004 agreement and, therefore, is subject to arbitration.

The court agrees with the respondent that the issues presented in the discovery proceedings are subject to arbitration since entitlement to the retirement benefits and insurance proceeds are issues which are necessarily and logically dependent on a determination of who owns Park Avenue. Justice York has already decided that the issue of who owns Park Avenue, which involves a determination as to the validity of the purported transfers to Marc and Messina's right to a buyback, is a dispute arising under the 2004 Agreement subject to arbitration by the AHLA. Thus, the issues of whether Arie's and Doreen's estates are entitled to the retirement benefits and the insurance proceeds is similarly a dispute arising under the 2004 Agreement which is subject to arbitration before the AHLA.

Accordingly, having determined that the disputes that are the subject of the discovery proceedings are subject to arbitration, it is not necessary to address Messina's other grounds for dismissal based upon collateral estoppel, untimeliness or waiver. Lastly, the court notes that petitioner's argument that submitting the issues in the discovery proceeding to arbitration will deprive Arie and Doreen's other children of an opportunity to be heard is unavailing. If Messina's claim to the insurance proceeds was asserted in Surrogate's Court, the petitioner as the fiduciary of the estate would be the interested party charged with defending the estate against the claim. The children's only remedy would be a surcharge against the fiduciary in the accounting proceeding if he failed to properly defend the claim. Arie and Doreen agreed during their lifetimes to arbitrate disputes arising under the 2004 Agreement. Accordingly, their estates and, as a result, their beneficiaries, are bound by the decedents' agreement.

For all of the foregoing reasons, the motion to dismiss the petitions is granted.

Settle order.

Dated: September 30, 2008

JOHN B. RIORDAN

Judge of the Surrogate's Court

End of
Document

© 2017 Thomson Reuters. No claim to original U.S. Government Works.

Westlaw © 2017 Thomson Reuters   Privacy Statement   Accessibility   Supplier Terms   Contact Us   1-800-REF-ATTY (1-800-733-2889)   Improve Westlaw   THOMSON REUTERS